**UNITED STATES of America**

v.

**Elias KENAAN.**

**Crim. No. 76–157–C.**

United States District Court,
D. Massachusetts.

Oct. 28, 1976.

Jeremiah T. O'Sullivan, Special Atty., U. S. Dept of Justice, Boston, Mass., for plaintiff.

Martin G. Weinberg, Boston, Mass., for defendant.

OPINION

CAFFREY, Chief Judge.

This matter came before the Court on the basis of defendant's motion to dismiss the indictment. The matter was briefed and argued by counsel. The undisputed facts are that the defendant was serving a state sentence in the Lawrence House of Correction on April 13, 1976, when a federal grand jury returned an indictment charging him with six counts of income tax evasion. He was twice transferred from the House of

Correction to this court pursuant to Writs of Habeas Corpus Ad Prosequendum. 28 U.S.C. § 2241. The first transfer was for bail and arraignment purposes on April 30, 1976. The second, on June 28, 1976, was for the purpose of offering a Rule 11(e) guilty plea, which plea the Court declined to accept. On both occasions he was returned to the Lawrence House of Correction, where he remains today.

The defendant's motion to dismiss is based on the Interstate Agreement on Detainers (IAD), 18 U.S.C. App. (Supp.1975). Essentially, this is an interstate compact, adopted by some 46 states and the United States. It is intended to facilitate the orderly disposition of untried indictments in jurisdictions other than the one in which the prisoner is held. Under the agreement, once a detainer is filed in the state of incarceration, either the prisoner or the indicting state (receiving state) may demand a transfer of the prisoner to the indicting jurisdiction for the purpose of trial. The agreement provides that once a transfer is so made trial must commence within 180 days in the case of a prisoner's demand or 120 days in the case of the indicting state's demand. Article IV(e) of the agreement provides:

> "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e), hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

The IAD was enacted into law by Congress on December 9, 1970. "State," under the agreement, includes the United States of America and its participation is in every way identical to that of the individual states, the District of Columbia, and the Commonwealth of Puerto Rico.

The following questions are before the Court:

(1) whether the IAD is the exclusive method of transfer; and (2) whether the participation of the United States in the IAD is as the sending state only or as both sending state and receiving state.

The Government's position is that the IAD is not the exclusive means of transfer, that the writ of habeas corpus is an additional means of transfer. The Government also contends that the United States is limited, under the agreement, to the role of a sending state only.

The legislative history of the Act indicates that Congress was attempting to afford to federal prisoners the rights of a speedy trial and an uninterrupted program of rehabilitation. The legislative history does not indicate that the Congress was attempting to afford those same rights to state prisoners awaiting trial on federal charges. However, the Act as enacted by Congress does not limit the participation of the United States to that of a sending state only. The Government points out that the Committee Report on the 1975 Criminal Justice Reform Act (S-1) suggests that the United States amend the IAD so that its participation would be limited to that of a sending state. As yet this proposed amendment has not been enacted into law.

The only cases which thus far have been decided regarding the IAD have held that the Courts are bound by the statute as written and not by the construction offered by the Government. In *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976), Chief Judge Lord found, on facts identical to those of the instant case, that the language of Article IV(e) controls and that the fact that the IAD is the exclusive means of effecting transfer. He further found that the federal court is in the same geographical state as the incarcerating state is irrelevant, and that under the agreement one transfer is all that is allowed.

In *United States v. Mauro*, 414 F.Supp. 358 (E.D.N.Y.1976), Judge Bartels held that the United States is a receiving state as well as a sending state. He suggested that an amendment to the agreement be enacted allowing prisoners to be transferred for the purposes of trial, but felt himself bound, as did Judge Lord, by the agreement as enact-

ed. See also, *United States ex rel. Esola v. Groomes,* 520 F.2d 830 (3 Cir. 1975). On October 26, 1976, the Court of Appeals for the Second Circuit handed down an opinion affirming the rulings made by Judge Bartels in *United States v. Mauro, supra.* See *United States v. Mauro,* 544 F.2d 588, 1976.

Accordingly, I rule that

■ 1. The IAD is the exclusive method of transfer. While the writ of habeas corpus may still issue to effect a transfer of a state prisoner for the purposes of trial on a federal indictment, the IAD limits the use of such writ to one transfer.

■ 2. The participation of the United States in the IAD is not limited to that of a sending state only. The United States participates as both a sending and receiving state under the express wording of the agreement and under the cases construing that agreement. While the legislative history of the Act indicates that Congress was attempting to alleviate the problems of federal prisoners, there is nothing in the Act itself nor in the legislative history to indicate that Congress intended these rights to apply to federal prisoners exclusively and not to state prisoners.

■ 3. Since the defendant was transferred from the Lawrence House of Correction twice without being tried on the indictment, the indictment must, under Article IV(e), be dismissed with prejudice. In so deciding, this Court is ruling in accord with the decisions of the only Circuit and District Courts which have previously passed on this issue. While the Government's argument that such a result was not foreseen by Congress is not without some appeal, it is more appropriately directed toward the Congress than toward this Court.

ORDER accordingly.