# UNITED STATES of America

v.

# Eric J. RANDALL.

## Crim. No. 77–43.

United States District Court, District of Columbia.

March 29, 1977.

Earl J. Silbert, U. S. Atty., James F. Rutherford, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Louis Fireison, Washington, D. C., for defendant.

## MEMORANDUM

CHARLES R. RICHEY, District Judge.

This case is before the Court on defendant Randall's motion to dismiss the indictment as to him, pursuant to Art. IV(e) of Section 2 of the Interstate Agreement on Detainers Act, 18 U.S.C.A. App. (Supp. 1976). For the reasons stated below, the Court will grant the motion.

The following facts are undisputed: Defendant was arrested in this jurisdiction on December 21, 1976, and charged with armed robbery. On January 17, 1977, defendant was sentenced to two years imprisonment in an unrelated case in the Prince George's County (Md.) Court. Following sentencing, defendant was confined at the Prince George's County Detention Center in Upper Marlboro, Maryland. On January 18, 1977, defendant was indicted in this Court, as a result of the incident leading to his aforementioned arrest on December 21, 1976, and charged with armed robbery, illegal possession of a sawed-off shotgun, and carrying a pistol without a license. On January 26, 1977, pursuant to a petition filed by the United States Attorney, this Court issued a writ of habeas corpus ad prosequendum commanding that defendant be transported from the Prince George's County Detention Center to this Court. On January 27, 1977, defendant was brought before the Court, pursuant to the aforesaid writ, for arraignment. At that time, defendant pleaded not guilty to the charges against him. Before the completion of the hearing, counsel for the defendant requested that his client be returned to Prince George's County for confinement rather than remain imprisoned in this jurisdiction pending trial. The Assistant United States Attorney assigned to this case did not oppose the request, and, accordingly, the defendant was returned to the Prince George's County Detention Center.

The instant motion was filed on February 4, 1977. Defendant relies on Art. IV(e) of the Interstate Agreement on Detainers (IAD), which provides:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Defendant points out that it is undisputed that defendant was returned to his original place of imprisonment before trial on the charges on which he was indicted in this

Court. Therefore, he asserts, the clear language of Art. IV(e) commands that the indictment be dismissed with prejudice. The United States opposes the motion on the ground that defendant waived any rights he may have had under Art. IV(e) when he specifically requested, through counsel, to be returned to his original place of imprisonment.

The motion has been poorly briefed by the parties, without citation to any pertinent authorities. The Court's own review of the IAD and pertinent authorities indicates that the motion turns on two issues: (1) What is the effect of the fact that defendant was brought into this jurisdiction not pursuant to the IAD, but pursuant to a writ of habeas corpus ad prosequendum? (2) Did defendant waive his rights under Art. IV(e) of the IAD when he requested that he be returned to the Prince George's County Detention Center?

■ The first issue is easily resolved. The weight of authority holds that the IAD is the exclusive means of effecting a transfer of a prisoner, for purposes of prosecution, from one signatory jurisdiction to another.[1] *See United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976); *United States ex rel. Esola v. Groomes*, 520 F.2d 830 (3d Cir. 1975); *United States v. Kenaan*, 422 F.Supp. 226 (D.Mass.1976); *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976). Moreover, the Act applies regardless of whether the prosecuting authorities in the transferee jurisdiction have filed a detainer with the appropriate officials in the jurisdiction of original confinement. *Mauro, supra; Esola, supra.*[2] Thus, in cases in which prisoners were brought into transferee jurisdictions pursuant to writ rather than the IAD and subsequently returned to their original places of confinement before trial on the charges in the transferee jurisdictions, courts have not hesitated to hold the prosecuting authorities to the requirements of the IAD; as a result, those courts have, in applying the terms of Art. IV(e), dismissed the indictments in question with prejudice. *See Mauro, supra; Kenaan, supra; Sorrell, supra.*

■ The waiver issue is also easily resolved, by reference to the statute and the *Mauro* case. In the instant case, defendant specifically requested to be returned to Prince George's County. It is to be remembered, however, that he was not brought into this jurisdiction pursuant to the IAD, but instead pursuant to the writ of habeas corpus ad prosequendum. An almost-identical situation arose in *Mauro*, in which the defendant specifically requested to be returned to state prison. The Court noted first:

Immediately prior to [defendant's] request, the request of another defendant . . . to remain in federal custody was denied because of overcrowding in the correctional center. In light of this, it would have been futile for [defendant] to make the same request before the same judge.

544 F.2d at 591 n. 3.

The Court then went on to declare:

*Moreover,* for it to have been effective as a waiver it must have been an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458 [, 58 S.Ct. 1019, 82 L.Ed. 1461] . . . (1938). The record is barren of any indication that this was so. [Defendant] did all that was required of him to claim his remedy under Article

1. Both the United States and the State of Maryland are signatories to the Agreement. *See* section 2 of the IAD, 18 U.S.C.A. App. (Supp. 1976); 27 Md.Ann.Code art. 27, §§ 616A–616R.

2. *But see United States v. Ricketson,* 498 F.2d 367 (5th Cir. 1974), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974). In *Ricketson,* the court concluded that the IAD did not apply where a writ had been issued but no

formal detainer had been filed. This Court prefers the reasoning of the district court in *Mauro,* relying on *Esola,* that a result such as was reached in *Ricketson* provides "an easy means for circumvention of the terms of the Agreement and render[s] them meaningless." *United States v. Mauro,* 414 F.Supp. 358, 362 (E.D.N.Y.1976), *aff'd,* 544 F.2d 588 (2d Cir. 1976).

IV(e)—"allege that one jurisdiction had requested his transfer from another jurisdiction for trial and returned him without trying him to the first jurisdiction." *United States v. Cappucci,* 342 F.Supp. 790, 793 (E.D.Pa.1972).

*Id.* (emphasis added).

This Court has reviewed the transcript of the hearing in question and concludes, as did the Court in *Mauro,* that the record fails to support a claim of waiver. Had the government obtained defendant's presence through the IAD, it might now be possible to say that defendant was on notice of his rights under that Act and waived them when he requested return to the place of his original confinement. But, here, the IAD had not been invoked by the government to obtain defendant's presence, and the Act was never discussed at the hearing. It seems clear that defendant therefore never even knew, and had no reason to know, of the existence of his rights under the IAD. Under these circumstances, in which plaintiff was deprived of any knowledge of the options available to him, it can hardly be said that defendant intentionally relinquished his rights.

Having made the above finding, the Court has no choice but to dismiss the indictment, with prejudice. As the *Ricketson* court wrote: "[T]here are no exceptions [in the statute] to the requirement that defendant not be returned to state custody untried." 498 F.2d at 373.

An Order in accordance with this Memorandum will be issued this date.