**Gerald Wayne HUFF, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 76CV336–W–4.**

United States District Court, W. D. Missouri, W. D.

Sept. 12, 1977.

Gerald Wayne Huff, pro se.

J. Whitfield Moody, Asst. U.S. Atty., Kansas City, Mo., for respondent.

## FINDINGS AND OPINION

ELMO B. HUNTER, District Judge.

Pursuant to 28 U.S.C. § 2255, petitioner Gerald W. Huff, has brought this action challenging the validity of his conviction and four year federal sentence as violative of the Interstate Agreement on Detainers Act, 18 U.S.C. Appendix Art. I–VIII. Petitioner claims that because he was released on four occasions from state custody to federal custody by writ of habeas corpus ad prosequendum addressed to the Warden of the Missouri state penal institution where he was incarcerated prior to trial of federal charges, and returned to the state penal institution before his federal trial occurred, the federal indictment and his conviction, sentence and the detainer based thereon all are void and he is entitled to be free of his federal conviction.

### Background

#### I.

The facts are undisputed. Petitioner on August 25, 1975, by virtue of a writ of habeas corpus ad prosequendum was removed from the Training Center for Men at Moberly, Missouri, where he was serving a five year sentence in state custody, to federal custody in the Jackson County Jail at Kansas City, Missouri, where he remained until September 5, 1975. The purpose of the removal was to enable him to appear before the federal magistrate in Kansas City, Missouri, for his initial appearance and omnibus hearing. He made that appearance on August 27, 1975. Then, on August 29, 1975, defendant appeared in the United States District Court for the Western District of Missouri (at Kansas City) for arraignment at which time he entered his plea of not guilty. After the omnibus hearing he was returned to the Missouri state facility. The United States Marshal's Office for the Eastern District of Missouri on August 26, 1975, mailed a detainer based upon the federal indictment of petitioner, returned in the Western District of Missouri, as requested by the United States Marshal for the Western District of Missouri to the Missouri State Training Center at Moberly, Missouri. That detainer was received at the state institution on August 28, 1975, and remains outstanding.

#### II.

On December 10, 1975, pursuant to a writ of habeas corpus ad prosequendum petitioner was again removed from the State Training Center at Moberly, Missouri, and again was taken to the Jackson County Jail at Kansas City and there held until December 17, 1975. The records do not disclose the reason for this removal and there is no indication that it was not for petitioner's benefit.

### III.

On January 15, 1976, pursuant to a writ of habeas corpus ad prosequendum petitioner again was removed from the State Training Center at Moberly, Missouri, and again taken to the Jackson County Jail where he remained until February 9, 1976, during which time the trial of petitioner on the federal charge was held on February 5–6, 1976.[1]

### IV.

Finally, on March 1, 1976, pursuant to a writ of habeas corpus ad prosequendum petitioner was again removed from the State Training Center at Moberly to the Jackson County Jail for the purpose of sentencing him, which occurred on March 3, 1976. He was returned to the State Training Center at Moberly, Missouri, on March 10, 1976.

In seeking to void his federal conviction and four year consecutive sentence petitioner relies on Section IV of the Interstate Agreement on Detainers Act[2] that provides:

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: And provided further, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

.    .    .    .    .

"(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

.    .    .    .    .

"(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Petitioner Huff in his Motion for Summary Judgment contends that he is automatically entitled to have his judgment of conviction and sentence set aside and to an order dismissing the indictment on which his conviction was obtained. He notes he was removed four times from the custody of the State of Missouri, two of them occurring before he was tried and convicted. He cites a Second Circuit Court of Appeals decision as support. See, *United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976).

Respondent notes that petitioner failed to raise his present contention before trial, before sentencing or on appeal,[3] and now seeks for the first time to raise it in this § 2255 proceeding. In any event, respondent argues, petitioner's contention totally lacks merit in that the cited Agreement

---

1. The files and records of this case reveal the case was set for trial only once, that being on the accelerated trial docket which commenced on February 2, 1976. Petitioner's case was reached for trial on February 5, 1976, and he was promptly tried at that time.

2. This Act was enacted in 1970 by Congress on behalf of the United States and is now in force in forty-six states. The United States, the District of Columbia and forty-six states are signatories to the Agreement. See 18 U.S.C. App. § 2.

3. See *United States v. Huff*, 8th Cir., 547 F.2d 1172.

does not apply to transfers from state custody to federal custody where the particular transfer is made pursuant to a federal writ of habeas corpus ad prosequendum issued pursuant to 28 U.S.C. § 2241(c)(5).

Respondent cites and relies upon several cases more recent than the *Mauro* split decision, *supra*.[4] These cases are *United States v. Kenaan*, 557 F.2d 912 (1st Cir. 1977); *Ridgeway v. United States*, 558 F.2d 357 (6th Cir. 1977), and *United States v. Scallion*, 548 F.2d 1168 (5th Cir. 1977). Thus, there is some split in the authorities on this basic and important question.[5]

While respondent has urged several reasons why petitioner should not prevail, this Court believes it to be in the interest of justice to place its holding solely on the question of whether or not a transfer pursuant to a writ of habeas corpus ad prosequendum issued pursuant to 28 U.S.C. § 2241(c)(5) of custody of a state prisoner at a state prison to federal custody for a brief time for such actions as arraignments, plea and omnibus hearing, and return to state custody without trial on the merits having occurred violates the Interstate Agreement on Detainers and mandates the quashing of the federal indictment and the conviction and sentence based thereon.

Careful reading of the cited cases persuades this Court that those which support respondent's position are the more soundly reasoned and should be followed. As clearly stated in the *Ridgeway* case, the *Kenaan* case, the *Scallion* case and the dissent by Judge Mansfield in *U.S. v. Mauro, supra*, it is not reasonable to equate action taken under the authority of the Interstate Agreement with action taken pursuant to a federal writ of habeas corpus ad prosequendum issued by a federal court pursuant to 28 U.S.C. § 2241(c)(5). As stated in *United States v. Kenaan, supra*, at page 915, 916:

"The differences between a detainer and a writ of habeas corpus ad prosequendum,

in purpose, legal basis, and historical context, are so fundamental as to constitute each a separate, distinct avenue for obtaining custody of prisoners for federal prosecution.

"A detainer is a formal notification, lodged with the authority under which a prisoner is confined, advising that the prisoner is wanted for prosecution in another jurisdiction. S.REP. NO. 91–1356, 91st Cong., 2nd Sess. 2, reprinted in [1970] U.S. Code Cong. & Ad. News, 4864, 4865. Long before the enactment of the Agreement, a detainer was treated as merely a request that the prisoner not be released until he could be taken into custody by the requesting state. In a sense, it was a request that the prisoner be placed on the 'will call' shelf, and many prisoners labeled 'will call' were never called for. On the other hand, the sending state was under no obligation to detain or deliver the prisoner except as it might choose to do so, a privilege maintained in modified form by Article IV(a) of the Agreement, which provides that the Governor of the requested state may refuse the request within 30 days after its receipt. The Agreement, as above indicated, added to the ancient practice the penalty of dismissal for failure to prosecute the prisoner obtained in response to lodgement of a detainer.

"A federal writ of habeas corpus under § 2241 is by contrast a federal court order, commanding the presentation of a prisoner for prosecution or as a witness in a federal court. It is judicially controlled by the federal district court, which may issue it for the production of a prisoner when 'it is necessary to bring him into court to testify or for trial.' 28 U.S.C. § 2241(c)(5). Upon receipt of such a writ, state authorities deliver the prisoner in accordance with its terms and in compliance with § 2241. If the court which issued the writ is satisfied

---

4. It is noteworthy that the Second Circuit in the later case of *United States v. Chico and Colello*, 558 F.2d 1047 (decided June 20, 1977) limited the effect of the *Mauro* decision.

5. The undersigned judge has several other pending § 2255 motions raising the same contention. Unfortunately, the one case the Eighth Circuit Court of Appeals had which presented this question was dismissed prior to decision. See, *Speed v. United States*, No. 77–1126.

that the prisoner's presence is no longer needed or will not be required temporarily, as occurred in this case following Kenaan's arraignment and his presentation of a guilty plea, it may order the prisoner returned to state custody.

"Analysis of the abuses which Congress and the states sought to curb with the Agreement further illustrates the differences between the detainer and the writ. Described only as 'uncertainties which obstruct programs of prisoner treatment and rehabilitation' in Article I of the Agreement quoted above, the abuses and their results were many. Prior to the Agreement, detainers were filed indiscriminately, often with no notification to the prisoner, on mere suspicion, and without procedural safeguards. Outstanding detainers frequently provided grounds for denial of parole, participation in special work, athletic and release programs, visiting privileges, and minimum security status. Normally, a prisoner was required to serve out his sentence in the first jurisdiction before being tried in the second, impeding chances for successful rehabilitation, hindering judges in rendering appropriate sentences, preventing concurrent service of sentences in the two jurisdictions and, as indicated in Article I of the Agreement, hindering parole and prison authorities in devising an appropriate rehabilitation program for the prisoner concerned. Long delays before trial in the second jurisdiction were prejudicial to the prisoner's defense as evidence was lost, witnesses disappeared, and memories faded. The mechanics of transfer were complicated by an absence of uniform rules and states were often reluctant to give up prisoners at all. The Agreement was specifically designed to remedy these problems by clearing detainers against a prisoner through prompt disposition of charges in another jurisdiction.

"A writ of habeas corpus ad prosequendum, however, has never been associated with any of the foregoing problems. As a court order, it is carried out immediately and is discharged when the prisoner is returned to state custody, unlike the detainer which had remained outstanding against the prisoner prior to the Agreement."

Additional support for respondent's position is set out and soundly reasoned in Judge Mansfield's dissent in *United States v. Mauro, supra,* at page 595:

"The majority, in my view, has failed to recognize and give effect to the significant functional and legal differences between a detainer and a federal writ of habeas corpus. A detainer, as its name implies, is an administrative notification lodged with a prison authority, advising that a certain prisoner in its custody is wanted for prosecution elsewhere and requesting that the prisoner be detained or held to face the out-of-state charge. See S.Rep.No. 1356, 91st Cong., 2d Sess., 1970 U.S.Code Cong. and Admin. News, pp. 4864–65. The detainer is not an order commanding or obligating the custodian to produce the prisoner; it is merely a request, usually respected as a matter of comity between states, to detain the prisoner so that a representative of the requesting state may take custody, with the consent and cooperation of the holding state, and transport or release him to the requesting state for the purpose of facing the new charge. Prior to a state's adoption of the Detainers Act it usually did not surrender the prisoner to the other state until the termination of his incarceration in the holding state, since that state was not obligated, except to the extent that it expressly elected to do so by extradition statute or as a matter of comity, to produce a prisoner who was the subject of a detainer or writ of habeas corpus lodged with it by another state. See, e. g., *May v. Georgia,* 409 F.2d 203, 204 (5th Cir. 1969); Schindler, Interjurisdictional Conflict and the Right to a Speedy Trial, 35 U.Cin.L.Rev. 179, 185 (1966). Similarly the federal government was not under any such obligation, see *Ableman v. Booth,* 62 U.S. (21 How.) 506, 16 L.Ed. 169 (1858); *Tarble's Case,* 80 U.S. (13 Wall.) 397, 20 L.Ed. 597 (1872); Warren, Federal and State Court Interference, 43 Harv.L.Rev. 345, 353–59 (1930), except to the extent that Congress authorized a prisoner to be transferred to the requesting state, see, e. g., Title 8 U.S.C. § 4085.

"Unlike a detainer, a federal writ of habeas corpus ad prosequendum is a federal

court order commanding the immediate production of a prisoner at a federal trial. Congress has expressly authorized the federal district courts, without qualification, to issue such writs for the production of a prisoner where 'it is necessary to bring him into court to testify or for trial.' 28 U.S.C. § 2241(c)(5). Upon being served with a writ of habeas corpus ad prosequendum, the state authority does not treat the writ as a detainer; it turns the prisoner over at once to the federal custodian, usually a U.S. Marshal. Nor is the prisoner thus surrendered by the state pursuant to any enabling law passed by it, such as the Detainers Act, but pursuant to § 2241, which represents the supreme law of the land, Const. Art. VI, cl. 2, and extends beyond the geographical boundaries of the district court which issued the writ. *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961)."

Further support of respondent's contentions are declared in *Ridgeway v. United States, supra*, at page 362:

"Further evidence that Congress did not intend to equate federal writs of habeas corpus with detainers is provided by a statement of the Senate Committee on the Judiciary issued to clarify this matter:

"Federal prosecution authorities and all Federal defendants have always had and continue to have recourse to a speedy trial in a Federal court pursuant to 28 U.S.C. 2241(c)(5), the Federal writ of habeas corpus ad prosequendum. The Committee does not intend, nor does it believe that the Congress is enacting the [Interstate Agreement on Detainers] in 1970 intended, to limit the scope and applicability of that writ. S. 1, 94th Cong., 1st Sess. (1975)."

And, finally, it is *stated in United States v. Scallion, supra*, at page 1173:

"There is nothing in the Act or its legislative history indicating any intent that the definition of a detainer be stretched to the point of including an order under a writ of habeas corpus ad prosequendum issued by a federal district court pursuant to authority of 28 U.S.C. § 2241(c)(5), and we regard it as incredible that the Judiciary Committees of both the House and Senate would fail to even mention the writ had such been the intent. Accordingly, we conclude that 'detainer' for purposes of the Act does not include a writ of habeas corpus ad prosequendum issued by a federal district court."

The undersigned Judge agrees with these authorities and with the dissent in *Mauro* that there is both a functional and legal difference between a detainer and a federal writ of habeas corpus. It follows that Article IV of the Interstate Agreement on Detainers Act which applies to detainers does not apply to a writ of habeas corpus ad prosequendum issued pursuant to 28 U.S.C. § 2241(c)(5).

For the above reasons petitioner's § 2255 motion is deemed to be without merit, and it is hereby dismissed.

IT IS SO ORDERED.