James O. GRAY, Petitioner,

v.

C. L. BENSON, Warden, Respondent.

Civ. A. No. 77-3041.

United States District Court,
D. Kansas.

Jan. 13, 1978.

Gerald N. Jeserich, of Carson, Fields & Boal, Kansas City, Kan., Howard L. Eisberg, Kansas City, Mo., for petitioner.

James P. Buchele, U. S. Atty., Mary K. Briscoe, Asst. U. S. Atty., Topeka, Kan., for respondent.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

Petitioner, James O. Gray, brings this action pursuant to 28 U.S.C. § 2255 challenging the validity of his federal conviction and six-year sentence as violative of the Interstate Agreement on Detainers Act, 18 U.S.C.Appendix (1977 Supp.). Petitioner claims that Articles III and IV of the Agreement were violated by the United States. On this basis he asserts that the federal indictment and his conviction and sentence based thereon are void and that he is entitled to be free of his federal confinement.

The following facts are undisputed. While petitioner was in state custody by virtue of an unrelated conviction and sentence under Missouri state law, a complaint was filed against him in the District of Kansas, charging violation of 18 U.S.C. § 2314 and § 2; a warrant issued on January 27, 1976.

On March 19, 1976, a detainer against petitioner was lodged with the Warden of the Missouri State Prison by the United states Marshal for the Western District of Missouri on the basis of the outstanding federal complaint and warrant. Petitioner was given a copy of the detainer and warrant but was neither informed nor aware of his rights under the Agreement.

Petitioner alleges he subsequently wrote a letter to the United States Attorney requesting that disposition be made of the detainer. The letter was received by the United States Attorney in Kansas City, Kansas, the prosecuting official, on April 27, 1976.

The next day, April 28, 1976, the Assistant United States Attorney petitioned for and was granted a writ of habeas corpus *ad prosequendum*, 28 U.S.C. § 2241(c)(5). The writ was issued by the undersigned judge, and directed the United States Marshal to produce petitioner for prosecution and trial before this court on May 6, 1976. Pursuant to this writ, petitioner was removed from state custody and brought before this court for a Rule 5 hearing and arraignment. He was indicted on May 27, 1976. Petitioner remained in federal custody until June 14, 1976, at which time he was returned by the United States Marshal to the Missouri State Prison. On this date petitioner moved to dismiss the federal indictment on the basis of denial of his right to a speedy trial.

Petitioner was held in state custody at the Missouri prison until August 12, 1976, when his removal to the District of Kansas was again accomplished by writ of habeas corpus *ad prosequendum*. Petitioner remained in federal custody until September 14, 1976.

Meanwhile, on August 20, 1976, pursuant to advice from his former attorney, petitioner withdrew his speedy trial motion and entered a plea of guilty to one count of the indictment. On September 7, 1976, petitioner was sentenced to a consecutive term of six (6) years.

On September 14, 1976, petitioner was again returned to Missouri where he completed service of his state sentence. On December 9, 1976, his federal sentence commenced and it is currently being served at the United States Penitentiary in Leavenworth, Kansas.

Petitioner filed the present motion to vacate sentence shortly after he became aware of the remedial provisions of the Interstate Agreement on Detainers.

Both the State of Missouri and the United States are signatories to the Agreement. *Rev.Mo.Stat.*, §§ 222.160–222.220; 18 U.S.C. App. (1977 Supp.). In seeking to void his federal conviction and six-year consecutive sentence petitioner relies on Sections III and IV of the Agreement. Section III pertinently provides:

> "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition . . . . . The request of the prisoner shall be accompanied by a certificate . . . stating [specific information]."

■ Petitioner alleges that he wrote a letter to the U. S. Attorney requesting disposition of the detainer in this action. However, it is clear from the letter and petitioner's allegations that his actions were not sufficient to trigger Article III of the Act. For example, he did not cause the request to be delivered to the appropriate court and he did not include the necessary certificate. Thus, the remedy provided by Section III(d) cannot be claimed under these facts.

In the alternative, petitioner relies on Section IV which provides:

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available   .   .   . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated .   .   .   ."

"(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment   .   .   ., such indictment .   .   .   shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Petitioner Gray contends that the Government triggered Section IV of the Agreement by issuing a writ of habeas corpus *ad prosequendum* after having filed a detainer with his state custodian. Respondent counters that the Agreement does not apply to transfers effectuated by writs of habeas corpus *ad prosequendum* under 28 U.S.C. § 2241(c)(5). Respondent also argues that, even assuming the provisions of the Agreement were applicable and violated, petitioner has waived any rights he may have had thereunder in that he failed to raise his present contention before entering a plea of guilty.

Obviously, the first question to be answered when a remedy is claimed under a particular statute is whether or not the statute applies. As can be noted from the above-quoted portions, the Interstate Agreement on Detainers clearly sets forth conditions precedent to its applicability.

The first prerequisite is that a detainer must have been lodged against the prisoner seeking relief under the Act. This is evident from the statutory language that the appropriate officer is entitled to have made available "a prisoner against whom he has lodged a detainer."

In some of the cases relied upon by petitioner the issuance of a writ of habeas corpus *ad prosequendum* is the sole governmental action effectuating the transportation of a state prisoner to a federal jurisdiction for trial. In our case the Government lodged a detainer prior to and in addition to issuing a writ of habeas corpus. Under the first situation, it is the view of this court that the Detainer's Act does not apply, for the simple reason that no detainer has been lodged. Petitioner presents the more substantial argument that in this case the Government, by lodging a regular detainer and then commanding his appearance by a federal writ of habeas corpus invoked Article IV(a) of the Agreement. We find this conclusion inescapable by the very terms of that provision. Where a detainer has been lodged and a written request for temporary custody is thereafter made, be it by writ of habeas corpus or other means, Article IV of the Agreement has been triggered.

In reaching this conclusion we have attempted to review thoroughly the current case law in this area. Several opinions have been rendered recently on motions to dismiss indictments or to vacate sentences based upon the remedial provisions of the Agreement. Out of those decisions we discern two main propositions which have been variously rejected or accepted by the deciding courts. The case which seems to have sparked a number of claims under the Agreement, *United States v. Mauro*, D.C., 414 F.Supp. 358 (1976), laid down both these rules. In that case the Eastern District of New York held that (1) whenever the provisions of the Agreement are available for securing the presence of a prisoner for a federal prosecution, the Act is the exclusive means for doing so; and (2) the writ of habeas corpus *ad prosequendum*, 28 U.S.C. § 2241(c)(5), constitutes a detainer within the meaning of the Interstate Agreement on Detainers. At petitioner's urging we have considered these principles as a basis for his claim to relief, and at respondent's insistence we have considered the cases which reject these notions.

We disagree with both of the propositions stated in *Mauro* ; yet we conclude that the Agreement was activated under the facts of the instant case. For this reason, we find it necessary to fully disclose our reasoning in rejecting *Mauro*.

The earliest pronouncement we have discovered of the proposition that the Agreement is the exclusive means of transferring a state prisoner is in *U. S. ex rel. Esola v. Groomes*, 520 F.2d 830 (3rd Cir. 1975). Since then that opinion has been cited and the principle applied in *United States v. Mauro,* 544 F.2d 588 (2nd Cir. 1976), *U. S. App. pending; United States v. Randall*, 429 F.Supp. 18 (D.D.C.1977); *United States v. Kenaan*, 422 F.Supp. 226 (D.Mass.1976); and *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976).

We note that in each of the above cases the federal government is the "demanding state" and has temporarily interrupted state custody by means of the federal writ of habeas corpus *ad prosequendum*. We find it significant that in the *Esola* case, federal custody was interrupted by the State of New Jersey. The method of procuring temporary custody was through a state court writ of habeas corpus. The *Esola* court held that the machinery of the Agreement is the exclusive means of effecting a transfer for the purpose of prosecution. We believe that the holding in *Esola v. Groomes* should not be applied to situations where the United States Government has taken custody of a state prisoner by a federal writ of habeas corpus *ad prosequendum*.

Our view is based on the fact that the federal writ constitutes a separate and distinct method from the Agreement for obtaining custody of prisoners for federal prosecution. On this point we find ourselves in accord with the first Circuit's opinion in *United States v. Kenaan*, 557 F.2d 912 (1 Cir. 1977), *U. S. App. pending*, which reversed and remanded one of the district court cases cited above that had applied the *Esola* principle.

We view the federal writ as a distinct mechanism for obtaining temporary custody

for the following reasons. A federal writ of habeas corpus issued pursuant to 28 U.S.C. § 2241 is valid legal process throughout the United States binding against all the states for the purpose of obtaining custody of state prisoners for federal trials. *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961); *United States v. Mauro, supra*, at 595 (dissenting opinion). The same obviously is not true of a writ of habeas corpus issued by a state court whose effect does not extend beyond the jurisdictional boundaries of the issuing court. Thus, prior to a state's adoption of the Detainer's Act it was not obligated to surrender its prisoners to a demanding state, *United States v. Mauro, supra* (dissenting opinion). The Detainer's Act obligates the signatory states to produce prisoners for trial upon the requisite demand by another party state. Therefore, it is logical to assume that transfers to a party state, other than the United States, are in actuality accomplished pursuant to the provisions of the Agreement. On the other hand, a Section 2241 writ, which represents the supreme law of the land, U.S.Const. Art. VI, cl. 2, commands the immediate production of a prisoner for federal trial and does not depend upon the Detainer's Act to vitalize its command.

From the above, we deduce that while the Detainer's Agreement may be the exclusive means for a state to secure temporary custody of an extrajurisdictional prisoner, it is clearly not the exclusive means for the federal government. Accordingly, we pointedly decline to lend credence to those cases applying the *Groomes* exclusivity rule to instances involving transfers by federal writs. This holding is in accord with *United States v. Scallion*, 548 F.2d 1168, 1171 (5th Cir. 1977), where it was reasoned that:

"The legislative history of the Interstate Agreement on Detainers Act ('Act') makes it clear that Congress did not intend the machinery established thereby to be the exclusive means of effecting a transfer of a prisoner for purposes of prosecution. Both the House and Senate

Judiciary Committee Reports on the bill (H.R. 6951) state:

> The agreement also provides a method whereby prosecuting authorities may secure prisoners serving sentences in other jurisdictions for trial before the expiration of their sentences and before the passage of time has dulled the memory or made witnesses unavailable. [Emphasis supplied.]

H.R.Rep. 91–1018, 91st Cong., 2d Sess. 2 (1970); S.Rep. No. 91–1356, 91st Cong., 2d Sess. 2 (1970); U.S.Code Cong. & Admin.News 1970, pp. 4864, 4865. Had there been an intent to make the Agreement exclusive and to, thereby, impliedly repeal 28 U.S.C. § 2241(c)(5), the committees would hardly have used the word 'a' to describe the method provided by the Agreement. Although Article IX provides that the Agreement 'shall be liberally construed so as to effectuate its purposes,' we are not persuaded that 'liberal' construction means ignoring the plain language of the reports of both the House and Senate Judiciary Committees."

■ We also do not base our holding that the Agreement applies in this case on the proposition that a federal writ of habeas corpus *ad prosequendum* is a detainer.

A writ of habeas corpus was held to be a detainer for purposes of the Agreement in *Esola v. Groomes, supra.* We reiterate that *Esola* is distinguishable in that the writ there was issued by a state court and was not the federal writ authorized under 28 U.S.C. § 2241(c)(5). As was noted in the Senate Judiciary Committee Report of 1975, "Unlike [28 U.S.C. § 2241], the State statutes do not provide a writ of habeas corpus *ad prosequendum* with nationwide territorial effect beyond the boundaries of the issuing State."

On a less abstract level, however, we find support for our view in a number of decisions which have held that the federal writ is not a detainer. *United States v. Kenaan, supra; United States v. Scallion, supra; Ridgeway v. United States*, 558 F.2d 357 (6th Cir. 1977); *United States v. Ricketson,*

498 F.2d 367 (7th Cir. 1974) (by implication); *Huff v. United States*, 437 F.Supp. 564 (W.D.Mo.1977); *see also, United States v. Mauro, supra* (dissenting opinion); *United States v. Thompson*, 562 F.2d 232, 237, n.5 (3rd Cir. 1977) (dissenting opinion of J. Weis). The rationale expressed in each of these cases is persuasive and convinces this court that the writ of habeas corpus issued pursuant to 28 U.S.C. § 2241(c)(5) is not a detainer as that term is employed in the Interstate Agreement on Detainers.

There are fundamental differences in purpose, legal effect and historical context between a detainer and a writ of habeas corpus *ad prosequendum.* The term "detainer" is not defined in the Agreement. We perceive this fact as an indication that the term is employed in its traditional sense. Had the lawmakers intended otherwise, they would have included the nontraditional definition in Article II of the Act which defines terms "as used in this agreement." There also is no express reference to a writ of habeas corpus *ad prosequendum* in the text or the legislative history of the Agreement. Therefore, our determination that a writ is not a detainer rests upon the historical background of both processes in addition to the legislative history of the Agreement.

The legislative history of the federal enactment of the Agreement is rather sparse, apparently because there was no opposition to it in either the House of Representatives or the Senate. However, Representative Kastenmeier, in introducing the Agreement, did remark that, "For the purpose of this legislation a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to stand trial on pending criminal charges in another jurisdiction." 116 Cong. Rec. 13999 (1970): *United States v. Mauro, supra.* That language was repeated in the Senate Report. S.Rep. No. 1356, 91st Cong., 2d Sess., 3 U.S.Code Cong. and Admin.News 4864, 4865 (1970).

Historically, a detainer has been treated as merely a request that the prisoner not be released until he could be taken into custo-

dy by the requesting state. "In a sense, it was a request that the prisoner be placed on the 'will call' shelf, and many prisoners labeled 'will call' were never called for." *United States v. Kenaan, supra*, at 915; *Huff v. United States, supra*. The filing of a detainer was an informal process and did not oblige the custodial authorities to detain or deliver the prisoner. The federal writ of habeas corpus under § 2241 is, by contrast, a federal court order commanding the presentation of a prisoner promptly or by a specified date for prosecution or as a witness in a federal court. Upon presentation of the writ to the custodial authorities, the prisoner is turned over to a federal custodian, while a detainer must be succeeded by further process before the prisoner is turned over. The detainer alone does nothing to effectuate the prosecution of an inmate.

Prior to the Agreement, detainers, as informal aids in interstate criminal law administration, were filed indiscriminately, often with no notification to the prisoner, on mere suspicion, and without procedural safeguards. Such informality was a main source of their abuse. Requests to an imprisoning jurisdiction to detain a person upon his release so that another jurisdiction might prosecute or incarcerate him could be filed groundlessly, or even in bad faith. The accusation in a detainer need not be proved, and no judicial officer need be involved in its issuance. *Ridgeway v. United States, supra*, at 360, 361.

Analysis of these and other problems which Congress and the states sought to resolve with the Agreement further illustrates the differences between the detainer and the writ. The abuses which the Agreement was intended to prevent were fully presented in *United States v. Ford*, 550 F.2d 732 (2nd Cir. 1977) *U. S. App. pending*:

"The Detainers Act was originally drafted in response to a variety of problems arising out of the then unregulated system of detainers commonly used where one or more jurisdictions had charges outstanding against a prisoner held by another jurisdiction. Under that system, once one of the jurisdictions had tried and convicted [the prisoner] the other jurisdictions, instead of trying him on their charges, would simply file detainers with the prison authorities holding him. The detainers would serve to notify the prison authorities that charges were pending against the prisoner elsewhere. Upon the prisoner's completion of the first prison term, the second jurisdiction could bring the defendant to trial on its own charges and, should a conviction be obtained, still other jurisdictions desiring to press charges might then file detainers with the prison where he was next incarcerated.

The disadvantages and potential abuses of this system were many. Prison authorities often accorded detainers considerable weight in making decisions with respect to the terms and conditions of the prisoner's incarceration and release on parole. Sometimes the prisoner would automatically be held under maximum security. Sometimes he would be ineligible for special work programs, athletic programs, release for visits to relatives' death beds or funerals, or special minimum security facilities. . . . Despite these serious consequences, virtually any law enforcement officer—prosecutor, policeman, or judge—could file a detainer without any procedural prerequisites. No pending indictment or other formal notification of charges was generally required. Indeed, it was estimated that as many as 50% of all detainers were allowed to lapse on the prisoner's release, without any attempts at prosecution by the jurisdiction that had filed the detainer. There were even cases in which the only reason the detainer had been filed was to increase the severity of the prisoner's sentence. Thus detainers imposed major unjustifiable hardships on prisoners, and, prior to adoption of the Agreement on Detainers, there was nothing a prisoner could do about them."

.  .  .  .  .

"Similarly, parole boards and prison authorities found it difficult to formulate

the prisoner's rehabilitative program, since they were forced to act without knowing whether the prisoner would be convicted on the other pending charges.

This same uncertainty also often adversely affected the prisoner's attitude towards his own rehabilitation. No matter how well he might behave and how zealously he might work towards his own rehabilitation, there was no way, as long as a detainer had been lodged and was pending against him, whereby he could count on release within a given period."

. . . . .

"Moreover, the prisoner subject to a detainer was handicapped by delay in preparing for trial of the charge upon which it was based."

. . . . .

"Finally, even when all jurisdictions concerned were otherwise willing to permit a temporary transfer to accord the prisoner a prompt trial on pending charges, such transfers were hampered by a lack of a uniform set of rules as to the mechanics of such transfers."

. . . . .

"There was no guarantee to the sending state that the receiving state would try and return the prisoner promptly—or return him at all."

. . . . .

"It was to remedy these problems that the present Interstate Agreement on Detainers was adopted in 1970 on behalf of the United States and the District of Columbia by way of the Interstate Agreement on Detainers Act." *Id.,* at 737–740 (citations omitted). *See* similar discussions in *United States v. Kenaan, supra; Ridgeway v. United States, supra* ; S.Rep. No. 91–1356, 91st Cong., 2d Sess. (1970).

We now compare this background of the history and purposes of detainers and the Agreement, with the writ of habeas corpus *ad prosequendum* and its origins. A federal writ of habeas corpus *ad prosequendum* is a court order directing the production of a prisoner to stand trial in federal court.

This writ is one of the oldest writs available to the judiciary. Its origin in the United States stems from § 14 of the First Judiciary Act, 1 Stat. 81–82 (1789), and it is now incorporated in 28 U.S.C. § 2241(c)(5). ·For almost 200 years the United States has utilized the writ of obtain state prisoners for trial on federal charges.

The federal writ of habeas corpus *ad prosequendum,* as distinguished from a detainer, has never given rise to the prejudicial consequences discussed earlier herein. The writ may be issued only by a federal court, unlike the detainer which can be filed by police authorities and prosecutors. The primary emphasis of the proponents of the Agreement was on the anti-rehabilitative effect of longstanding detainers. Note, *Effective Guaranty of A Speedy Trial for Convicts in Other Jurisdictions,* 77 Yale L.J. 767, 775 (1968); *Ridgeway v. United States, supra.* The writ is not subject to this objection because it is executed expeditiously and discharged upon the return of the prisoner to the state institution, unlike a detainer which can lay dormant for many years. Thus, the abuses of detainers which the Agreement was designed to alleviate are not present with the use of the federal writ.

The interpretation of the writ as a detainer would implicitly repeal or modify § 2241(c)(5). *United States v. Kenaan, supra; Ridgeway v. United States, supra.* Along with the Fifth Circuit Court of Appeals we regard it as incredible that the Judiciary Committees of both the House and Senate would fail to even mention the venerable writ had such been the intent. *United States v. Scallion, supra.* Thus, we refuse to inferentially interpret the word "detainer" to include the federal writ of habeas corpus *ad prosequendum.*

Further evidence that Congress, in adopting the Detainer's Act did not intend to equate federal writs of habeas corpus with detainers is provided by the later statement of The Senate Committee on the Judiciary issued when it expressly recommended clarification of the matter in the proposed Criminal Justice Reform Act of 1975 (S. 1):

"Federal prosecution authorities and all Federal defendants have always had and continue to have recourse to a speedy trial in a Federal court pursuant to 28 U.S.C. 2241(c)(5), the Federal writ of *habeas corpus* ad prosequendum. The Committee does not intend, nor does it believe that the congress in enacting the Agreement in 1970 intended, to limit the scope and applicability of that writ. S. 1, 94th Cong., 1st Sess. (1975)."

Although this statement post-dated the adoption of the Detainer's Act, it is significant for the reason that 12 of the 15 members of the Committee who issued it had been members who joined in the original report recommending adoption of the Detainer's Act (Sen.Rep. 91–1356), *Sioux Tribe v. United States*, 316 U.S. 317, 319, 62 S.Ct. 1095, 86 L.Ed. 1501 (1941); *United States v. Mauro, supra* (dissenting opinion).

█ Interpreting the Agreement in such a way as to modify the federal writ would run counter to fundamental rules of statutory construction. Where Congress has enacted legislation on a particular subject, as it has for a writ of habeas corpus *ad prosequendum*, subsequent legislation will not be construed to modify, repeal or supplant the legislation, particularly where both statutes serve distinct purposes. *Rosencrans v. United States*, 165 U.S. 257, 17 S.Ct. 302, 41 L.Ed. 708 (1897). Rather, the courts should reconcile the earlier statute and the later legislation if possible. *McCool v. Smith*, 66 U.S. (1 Black) 459, 17 L.Ed. 218 (1861). Writs of habeas corpus *ad prosequendum* serve the purpose of processing a state prisoner for federal trial, distinctive from the notification and hold purpose served by detainers. The two statutes should not and need not be construed as conflicting. We agree with the learned Judge Mansfield, who has probably written more on this subject than any other federal judge, that the statutes are so easily reconcilable that it would be error to hold in effect that § 2241 is implicitly repealed in part by the Agreement, *United States v. Mauro, supra* (dissenting opinion).

A few federal courts have expressed concern that Article IV(e) of the Agreement would be rendered meaningless if federal authorities were free to employ the writ as a means of circumventing the strictures of the Agreement. This concern is unfounded, however, as explained in *United States v. Kenaan, supra*, at 917:

"First, the concern rests on a hypothetical. The writ and the actions taken pursuant thereto being under the control of the issuing court, we are confident that the court will be alert to, and fully empowered to forestall, potential abuses of the writ. Second, any concern over potential delay-in-trial abuses by the federal Government are further diminished by the provisions of the Federal Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174."

For all of the above reasons, we conclude that the federal writ of habeas corpus *ad prosequendum* is not a detainer within the Agreement.

However, we find that the presentation of the federal writ to the state authorities does constitute the request for temporary custody contemplated by Article IV(c) of the Agreement. *United States v. Ford, supra; United States v. Ricketson, supra; Speed v. United States*, No. T–76–10–C (W.D.Ark.1977). To hold otherwise would require an even more contrived avoidance of literalism than the expansion of the term "detainer" to include a federal writ of habeas corpus *ad prosequendum*. Thus, we are constrained by logic to hold that Section IV of the Agreement was activated by the prosecuting authority's request for temporary custody in the form of the presentation of the writ which followed the lodging of the detainer. We find support for this conclusion in the majority of relevant cases. *United States v. Ford, supra*, at 741; *United States v. Ricketson, supra; United States v. Scallion, supra*, at 1174; *United States v. Ridgeway, supra*, at 359; *United States v. Enright*, (on reargument), 437 F.Supp. 580 (S.D.N.Y.1977); *United States v. Kenaan, supra*, n. 6 (dicta).

Implicit in this holding is our rejection of the Government's argument that the

Agreement applies to no set of facts which involves the use of the federal writ of habeas corpus *ad prosequendum*. Among the cases relied upon for this proposition are *Scallion, Ricketson* and *Kenaan* cited above. In all three of these cases the courts held that the Agreement was inapplicable, not because the transfer was pursuant to a federal writ, but because the transfers by writ were not preceded by the lodging of a detainer. *Huff v. United States*, 437 F.Supp. 564 (W.D.Mo.1977), is the sole case we have found which clearly holds that the Agreement does not apply to a transfer by federal writ even when that writ has been preceded by a detainer. However, the *Huff* court makes an unexplained jump from the proposition that the federal writ is not a detainer to a blanket statement that the Agreement does not apply to any factual situation which includes such a writ. We do not agree with this conclusion.

Our interpretation of the federal writ of habeas corpus as a request but not a detainer is consonant with the purposes of the Agreement. Upon the lodging of a detainer, the incarcerating officials must inform the prisoner of the detainer and his rights under the Agreement, Art. III(c). If the Government does not proceed to request temporary custody either by federal writ of habeas corpus (a duplicative effort in our view) or solely pursuant to the Agreement, the prisoner himself may invoke the strictures of the Act by making the written request for disposition under Article III. After the lodging of a detainer the Agreement, intended to quell the potential abuses of that detainer, is triggered by the appropriate action of either the prisoner, or the demanding authority, Article IV. The inaction of one of the possible "activators" cannot prevent the other from invoking and thereby enjoying the protections or conveniences afforded by the Agreement. The federal government might avoid its responsibilities under the Agreement by transferring a prisoner by federal writ without lodging a detainer. However, such action does not circumvent the Agreement, as the Act is intended not to remedy all impediments to a speedy trial or uninterrupted rehabilitation, but to overcome those impediments to these two rights *caused by detainers*. Hence the title "Interstate Agreement on *Detainers*."

It is therefore our holding that the actions of the government in this case were sufficient to place in motion the operation of the Detainers Agreement with the consequence that the transfers challenged herein were subject to the provisions of Article IV(e).

■ Having determined that the Agreement applies, we next consider whether a violation of its terms has in fact occurred. We have no difficulty concluding that the terms of the Agreement were violated under the facts as alleged by both petitioner and respondent and supported in the record. A detainer was lodged against Gray, who was then a prisoner at the Missouri State Penitentiary. Pursuant to a federal writ of habeas corpus *ad prosequendum*, Gray was removed from state custody and appeared before this court for a Rule 5 hearing and arraignment. He was "returned to the original place of imprisonment" on June 14, 1976, and was returned without being tried. Those facts unmistakably evidence a violation of Article IV(e) of the Interstate Agreement on Detainers.

The Government argues that even assuming the Agreement was violated, Gray waived any such violation by failing to present the issue prior to entering a plea of guilty. Petitioner counters that his claim, characterized as a jurisdictional defect, is not waivable; or, alternatively, that there was no knowing and intentional waiver of his rights under the Agreement.

■ At the outset, we note that the courts which have addressed the specific issue of waiver of a prisoner's right to trial prior to his return to the sending state was conferred by Article IV(e) have assumed that the right is waivable. *Bambulas v. United States*, No. 76–87–C3 (D.Kan. Sept. 7, 1977) (dicta); *United States v. Scallion, supra*, at 1170; *United States v. Ford, supra*, at 742; *United States v. Mauro, supra*, at 591, n. 3; *Strawderman v. United States*,

436 F.Supp. 503 (E.D.Va.1977); *United States v. Randall*, 429 F.Supp. 18, 20 (D.D.C. 1977); *Enright v. United States*, 434 F.Supp. 1056 (S.D.N.Y.1977). We find this assumption sound. The question remains as to whether or not our petitioner waived this right under the facts herein.

Rule 12 of the Federal Rules of Criminal Procedure is relied upon by respondents as a basis for their waiver contention. Sections (b)(1), (2) and (f) of that rule provide in essence that failure to raise defenses and objections based upon defects in the institution of the prosecution or on defects in the indictment or information (other than attacks on jurisdiction or allegations that the indictment fails to charge an offense) "shall constitute a waiver thereof." It appears to this court that Rule 12 and the recent United States Supreme Court cases hereafter cited have attempted to isolate a class of rights or violations of rights which are inferentially waived by the fact that they are not raised prior to or during trial. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1972); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *see also Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1972). If the right violated here is of that class, then the facts as presented evidence waiver since this claim was not raised prior to entry of petitioner's guilty plea. (We note, however, the preclusive effects of the waiver may still be avoided for "cause shown" under subsection (f) of Rule 12).

On the other hand, the *Johnson v. Zerbst* test relied upon by petitioner requires a waiver in fact and has not been overruled. This test apparently is to be applied to those rights or violations not within the inferentially-waivable class. Accordingly, we must ascertain what type of right is involved here—the type that may be waived by inference or the type that must be waived in fact.

The Second Circuit has explicitly stated that the rights under the Agreement are subject to the *Johnson v. Zerbst* test so that

a waiver of those rights is only effective upon a showing that there was an "intentional relinquishment or abandonment of a known right or privilege." *United States v. Mauro, supra;. accord: Enright v. United States*, 434 F.Supp. 1056 (D.Conn.1977); *Randall, supra*. If the issue were solely whether or not petitioner had in fact knowingly and intentionally waived his right under the Agreement, we would have no difficulty concluding that he has not.

However, the government's argument and the recent U. S. Supreme Court cases cited above seem to suggest that we need not inquire as to whether a waiver has in fact occurred. Rather, the government would have us infer a waiver of petitioner's claim under Rule 12 and the principles enunciated in *Davis v. United States, supra* and *Tollett v. Henderson, supra. Tollett v. Henderson* was relied upon by the Court in *Strawderman v. United States, supra*, which concluded that a violation of the Agreement is only statutory, not rising to constitutional proportions, and therefore precluded by the prior entry of a guilty plea. We have found no case holding that the specific right claimed here is subject to the provisions of Rule 12.

This question is one of first impression within our circuit. Moreover, we believe that cases which have disposed of this issue have only superficially dealt with it. Thus, we find it necessary to direct that additional briefs be submitted by both parties to this action on the issue of waiver.

In addition to legal briefs either party may submit factual materials relative to the waiver question. As the case now stands, petitioner has presented ample allegations that no waiver in fact has occurred. He plainly professes that he did not previously assert this right because he had no knowledge of it. In support of this statement he alleges that he was not informed of his rights under the Agreement by the Missouri prison authorities when the detainer was lodged as is required under Article III(c). He further alleges that appointed counsel did not inform him of these rights, but instead advised him upon his inquiry

that shuffling a prisoner back and forth for trial was not objectionable. It is also contended that the indictment should have been dismissed on the record at the court's instance since the language of Article IV(e) is mandatory and does not require further action on behalf of the aggrieved prisoner. The government has refuted none of these allegations.

In summary, we hold that a detainer having been lodged and a written request for temporary custody made by presentation of a federal writ of habeas corpus, Article IV(e) of the Interstate Agreement on Detainers was activated by respondents in this case; the Agreement was violated; and the rights provided thereunder are waivable. Additional legal briefs are requested on the remaining issue: whether or not petitioner Gray waived his right under Article IV(e) by failing to raise this claim before entering a plea of guilty.

IT IS THEREFORE ORDERED that petitioner be granted thirty (30) days from receipt of a copy of this order in which to submit a brief on the remaining issue; that respondents be granted fifteen (15) days from the filing of petitioner's brief in which to submit a brief in response; and that petitioner be granted five (5) days from the filing of respondent's brief to file a reply thereto if desired.

IT IS FURTHER ORDERED that the clerk return this file at the end of the allotted time period to the undersigned judge for further appropriate consideration and that the clerk transmit copies of the foregoing Memorandum and Order to the petitioner; to counsel for petitioner, Mr. Howard Eisberg, 15 West 10th Street, Suite 310, Kansas City, Missouri, 64105; and to the office of the United States Attorney in Topeka, Kansas.

IT IS SO ORDERED.