UNITED STATES of America,
Plaintiff-Appellee,

v.

Claude John SCALLION, Raymond Lynn Buckelew, James Laney Jenkins and Judson Lee Drane, Defendants-Appellants.

No. 74–4246.

United States Court of Appeals,
Fifth Circuit.

March 18, 1977.

MILLER, Associate Judge:

This matter is before us on an amended petition for rehearing by Scallion, filed July 23, 1976, the original petition for rehearing, filed June 30, 1976, having been denied. Because the issue raised by the amended petition is one of first impression in this circuit, namely: the applicability of the Interstate Agreement on Detainers ("Agreement"), the Government was directed to respond to the amended petition. The response was received October 22, 1976. On October 27, 1976, a motion was offered for leave to file an amicus curiae brief in behalf of petitioner, and, leave having been granted, the amicus brief was filed December 3, 1976.

Scallion was convicted, with others, in federal district court under 18 U.S.C. § 1343 and 18 U.S.C. § 371. On appeal, all convictions were affirmed (533 F.2d 903). One of the issues on appeal raised by Scallion was whether he was deprived of his Sixth Amendment right to a speedy trial by the "delay" in his trial from November 16, 1973 (the date of his first appearance before a U.S. Magistrate, at which time he demanded a speedy trial), until September 24, 1974, when trial began. We determined that the lapse of time involved was not "delay," much less "inordinate delay," pointing out that the record was replete with pretrial motions which generated responses by the prosecution, briefs, and hearings; that the prosecution had to arrange the appearance of numerous out-of-state witnesses; and that there had been no showing that the lapse of time impaired Scallion's ability to defend himself or jeopardized his other interests.

Defendant Scallion, pursuant to a writ of habeas corpus ad prosequendum ordered by the district court below and directed to the United States Marshal (or any of his deputies) and to the Warden, Ossining Correctional Facility, Ossining, New York (where

Thomas W. Davenport, Jr., Monroe, for Scallion.

Thomas L. Robinson, Memphis, Tenn. (Court appointed), for Buckelew and Jenkins.

Robert W. Laster, Little Rock, Ark. (Court appointed), Michael T. Pulaski, Alexandria, La. (Court appointed), for Drane.

Gerald Isaac Sassoon, amicus curiae (on behalf of appellant Scallion).

Donald E. Walter, U.S. Atty., D. H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., Michael W. Farrell, Washington, D.C., for plaintiff-appellee.

On Amended Petition for Rehearing

(Opinion June 17, 1976, 5 Cir. 1976, 533 F.2d 903)

(Mar. 18, 1977)

Before BROWN, Chief Judge, THORNBERRY,* Circuit Judge, and MILLER,** Associate Judge.

---

* Judge Thornberry, because of illness, did not participate in the original opinion on the merits. The subject of this opinion on petition for rehearing by the appellant Scallion relating to the Detainer Act was raised for the first time by the amended petition for rehearing as to

which all members of the panel have fully participated.

** Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

Scallion was serving a sentence imposed by a New York State court), appeared in district court on December 17, 1973,[1] was arraigned and placed in jail in custody of the United States Marshal. On May 31, 1974, Scallion's counsel requested the assistance of the United States Attorney to enable Scallion to return to New York temporarily for a parole hearing for which he had become eligible. On June 13, 1974, the United States Attorney authorized the Marshal's Service to return Scallion to New York for that purpose, and on July 29, 1974, he departed for New York. On August 8, 1974, a second writ of habeas corpus ad prosequendum was ordered by the district court below directing that Scallion be delivered to the court at 9:30 A.M., September 23, 1974. He was actually returned in time for a pretrial conference on September 12, 1974, and trial began September 24, 1974.

Now, for the first time, Scallion argues that his indictment was of no force or effect and should have been dismissed with prejudice under Article IV(e) of the Interstate Agreement on Detainers, enacted by Pub.L. No. 91–538, §§ 1–8 (Dec. 9, 1970), 84 Stat. 1397; 18 U.S.C.A., App. (1976 Supp.) at 207–13.[2] Article IV in pertinent part reads as follows:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: *Provided*, That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and trans-

mitted the request: *And provided further*, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

.      .      .      .      .

(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

.      .      .      .      .

(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof,[3] such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

■    Specifically, Scallion argues that, in violation of Article IV(c), he was not brought to trial within 120 days of his arrival in the district court below on December 17, 1973, and there was no good cause shown in open court for continuance of his trial; also that, in violation of Article IV(e), he was not tried before his return to New York on July 29, 1974. Although the record supports Scallion's allegation that he was not tried before his return to New York on July 29, 1974, this return was at his own request in order to be present for a parole hearing. Accordingly, we hold that he is estopped from making this argument. The record also supports Scallion's allegation

---

**1.** The order for the writ was dated November 29, 1973, and directed that Scallion be produced at U.S. District Court, Alexandria, Louisiana, at 9:00 A.M., December 17, 1973.

**2.** The State of New York had adopted the Agreement before the first habeas corpus ad

prosequendum was issued for Scallion. N.Y. Crim.Proc.L., § 580.20.

**3.** Article V(e) provides:

At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State.

that he was not brought to trial within 120 days of his arrival on December 17, 1973, and that there was no good cause shown in open court for continuance of his trial. However, his argument on this point rests on an assumption that the Agreement applies to a habeas corpus ad prosequendum ordered by a federal district court.

■ The legislative history of the Interstate Agreement on Detainers Act ("Act") makes it clear that Congress did not intend the machinery established thereby to be the exclusive means of effecting a transfer of a prisoner for purposes of prosecution. Both the House and Senate Judiciary Committee Reports on the bill (H.R. 6951) state:

> The agreement also provides a method whereby prosecuting authorities may secure prisoners serving sentences in other jurisdictions for trial before the expiration of their sentences and before the passage of time has dulled the memory or made witnesses unavailable. [Emphasis supplied.]

H.R.Rep. 91–1018, 91st Cong., 2d Sess. 2 (1970); S.Rep. No. 91–1356, 91st Cong., 2d Sess. 2 (1970); U.S.Code Cong. & Admin. News 1970, pp. 4864, 4865. Had there been an intent to make the Agreement exclusive and to, thereby, impliedly repeal 28 U.S.C. § 2241(c)(5),[4] the committees would hardly have used the word "a" to describe the method provided by the Agreement. Although Article IX provides that the Agreement "shall be liberally construed so as to effectuate its purposes," we are not persuaded that "liberal" construction means ignoring the plain language of the reports of both the House and Senate Judiciary Committees.

To fully understand the "purposes" of the Act, we quote from Article III:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided*, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

> (b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

> (c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

> (d) Any request for final disposition made by a prisoner pursuant to para-

---

4. 28 U.S.C. § 2241(c) provides:

The writ of habeas corpus shall not extend to a prisoner unless—

. . . . .

(5) It is necessary to bring him into court to testify or for trial.

graph (a) hereof shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections, or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the State to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

.        .        .        .        .

Thus, as both the House and Senate Judiciary Committee Reports, *supra* at 2–3; U.S. Code Cong. & Admin.News 1970, p. 4865, explain:

The agreement . . . makes the clearing of detainers possible at the instance of a prisoner who is serving a sentence and also at the instance of prosecuting officials of a jurisdiction other than that in which a prisoner is incarcerated. The agreement gives the prisoner no greater opportunity to escape a conviction, but it does provide him with a procedure for bringing about a prompt test of the substantiality of detainers placed

against him by other jurisdictions. The result is to permit the prisoner to secure a greater degree of certainty as to his future and to enable the prison authorities to plan more effectively for his rehabilitation and return to society.

.        .        .        .        .

The Attorney General has advised the committee that a prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing. *Although a majority of detainers filed by States are withdrawn near the conclusion of the Federal sentence,* the damage to the rehabilitation program has been done because the institution staff has not had sufficient time to develop a sound prerelease program. [Emphasis supplied.]

Therefore, we conclude that the intent *not* to make the machinery established by the Act the exclusive means of effecting a transfer of a prisoner for purposes of prosecution and to preserve, at least, the writ of habeas corpus ad prosequendum ordered by federal district courts is reasonably compatible with the "purposes" of the Act.[5] This is particularly so when we consider that such a writ is executed promptly in contrast to "a majority of detainers filed by [the]

---

**5.** Thus we decline to follow the Third Circuit's "holding" in *United States ex rel. Esola v. Groomes,* 520 F.2d 830, 837 (1975). We share that court's concern, *supra* at 837, that Article IV(c) and (e) not be made "meaningless." However, we perceive no such result from our conclusion that the Act preserves the writ of habeas corpus ad prosequendum ordered by federal district courts. As can be seen from

the Attorney General's advice to the House and Senate Judiciary Committees (last quoted paragraph, *supra* ), the primary concern of Article IV is elimination of abuses of detainers by states—not of abuses of the writ of habeas corpus ad prosequendum by federal prosecutors. *See Huston v. State of Kansas,* 390 F.2d 156 (CA 10 1968).

States [being] withdrawn near the conclusion of the Federal sentence." [6]

Although the Act does not define "detainer," both House and Senate Judiciary Committee Reports, *supra*; U.S.Code Cong. & Admin.News 1970, p. 4865, do so as follows:

A detainer is a notification filed with the institution in which a person is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.

Both historically and substantively, the writ of habeas corpus ad prosequendum issued by a federal district court is entirely different from a "detainer" as above defined. Such a writ was encompassed by the authority to issue writs of habeas corpus generally, granted by the First Judiciary Act, 1 Stat. 81–82 (1789), although it was not until 1948 (62 Stat. 964) that Congress specifically directed its attention to the authority for issuance of a writ to bring a prisoner into court for trial (28 U.S.C. § 2241(c)(5)). *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). The writ of

habeas corpus ad prosequendum issued by a federal district court is an order commanding the production of a prisoner promptly or by a specified date, whereupon he is turned over to a federal custodian, usually a U.S. Marshal; [7] whereas a detainer is merely a notice that the prisoner is wanted to face pending criminal charges and requires further process ("a written request for temporary custody or availability," as provided in Article IV(a)) before the prisoner is turned over. There is nothing in the Act or its legislative history indicating any intent that the definition of a detainer be stretched to the point of including an order under a writ of habeas corpus ad prosequendum issued by a federal district court pursuant to authority of 28 U.S.C. § 2241(c)(5), and we regard it as incredible that the Judiciary Committees of both the House and Senate would fail to even mention the writ had such been the intent. Accordingly, we conclude that "detainer" for purposes of the Act does not include a writ of habeas corpus ad prosequendum issued by a federal district court. It follows, and we so hold, that the Agreement does not apply to such a writ. [8]

**6.** It is significant that the House Committee Report cites only *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), and the Senate Committee Report cites only that case and *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), both of which relate to undue delay by a state in bringing a defendant to trial while he was serving a sentence in a federal prison.

**7.** The Supreme Court has not undertaken to reach the *issue of the effect of the writ of* habeas corpus ad prosequendum in the event a state authority does not choose to honor it. *Carbo v. United States, supra* at 621 n.20, 81 S.Ct. at 344 n.20, 5 L.Ed.2d at 336, n.20. Although there is judicial authority for the proposition that the state authority honors such a writ as a matter of comity, we note that it consists of dicta and/or relies upon cases decided prior to the 1948 Act, *supra* n.4. *See Ponzi v. Fessenden*, 258 U.S. 254, 260, 42 S.Ct. 309, 310–11, 66 L.Ed. 607, 611 (1922); *McDonald v. Ciccone*, 409 F.2d 28, 30 (CA 8 1969), citing *Crow v. United States*, 323 F.2d 888 (CA 8 1963) (which, at 890 n.1, did not reach the issue), and *United States ex rel. Moses v. Kipp*, 232 F.2d 147 (CA 7 1956) (which quoted from the 1942 case of *Lunsford v. Hudspeth*, 126 F.2d 653 (CA 10)). It would seem that the state authority honors the writ pursuant to 28 U.S.C. § 2241, which extends beyond the geo-

graphical boundaries of the district court that issued it. Const. Art. VI, cl. 2. *United States v. Mauro*, 544 F.2d 588, 20 Cr.L. 2146 (CA 2 1976) (dissenting opinion of Judge Mansfield). However, this point need not be decided to *differentiate a writ of habeas corpus ad prosequendum issued by a federal district court from a detainer.*

**8.** We cannot follow the Second Circuit's holding to the contrary in a split decision in *United States v. Mauro, supra* n.7. The ratio decidendi appears to be: "Any other construction would permit the United States to evade and circumvent the Agreement by simply utilizing the traditional writ." This is similar to the concern expressed by the Third Circuit in *United States ex rel. Esola v. Groomes, supra* n.5, to which we have responded in notes 5 and 6 and in our discussion of the "purposes" of the Act. Amicus quotes a "holding" in *United States v. Ricketson*, 498 F.2d 367, 373 (CA 7), *cert. denied*, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974), as follows: ". . . that the Writs of Habeas Corpus Ad Prosequendum issued in this case *are* requests for purposes of the Agreement . . . ." The full quotation reads: "We will assume that the Writs of Habeas Corpus Ad Prosequendum issued in this case are requests for purposes of the Agreement." It was not a holding, since the court

 The Government argues that, assuming the provisions of the Agreement were violated, Scallion waived any such violation by failing to present the issue to the district court or this court prior to his amended petition for rehearing. We agree. To consider Scallion's unconstitutional claim at this late stage would tend to encourage piecemeal litigation of claims of error in the appellate courts and undercut the policy of achieving prompt and final judgments. Even when the constitutional issue of a right to a speedy trial is involved, failure to raise it before or during trial has been held to waive the issue. *United States v. Ferrara*, 458 F.2d 868, 875 (CA 2), *cert. denied*, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972); *Peoples v. Hocker*, 423 F.2d 960, 966 (CA 9 1970); *Peterson v. United States*, 405 F.2d 102, 108 (CA 8 1968), *cert. denied*, 395 U.S. 938, 89 S.Ct. 2003, 23 L.Ed.2d 453 (1969). Although such cases, involving as they do a constitutional right, must be approached on an ad hoc basis, "a defendant has some responsibility to assert a speedy trial claim," and "the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Barker v. Wingo*, 407 U.S. 514, 528–29, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101, 116 (1972). *Cf. United States v. Waldin*, 253 F.2d 551, 558 (CA 3), *cert. denied*, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958). We note that Scallion has offered no explanation for his failure to raise the Agreement issue before the district court or earlier on his appeal and that he would have been in the most favorable position to evaluate the advantages or disadvantages from raising it in a timely manner.

 The Government also argues that when Congress enacted the Act it intended to cast the United States in the role of a "Sending State" and not a "Receiving State" under the Agreement in recognition of the existing power to obtain custody of state prisoners by the use of the writ of habeas corpus ad prosequendum. We are unable to detect such intent. Article II provides that "State" as used in the Agreement includes the United States of America. To the extent that the United States makes use of a detainer, it is a "Receiving State" subject to the terms of the Agreement. *United States v. Mauro, supra* n.7. Indeed, the Government's brief shows that, in connection with Scallion's return to New York for the parole hearing, a detainer was placed with the Warden having custody of Scallion by the United States Marshal, Southern District of New York, on August 1, 1974.

In view of the foregoing, reversal of conviction and dismissal of the indictment requested by the amended petition for rehearing must be denied.

---

determined that the defendant's trial took place well within the 120-day limit provided by Article IV(c) and before he was returned to state custody. Moreover, the court stated that "we need not decide whether the Agreement is exclusive when it applies."