Joseph Herbert MARS, Petitioner,

v.

UNITED STATES of America, Respondent.

Civ. A. No. 7–70165 and Crim. A. No. 4–82908.

United States District Court, E. D. Michigan, S. D.

Jan. 13, 1978.

Federal Defender Office by F. Randall Karfonta, Frederick L. Miller, Detroit, Mich., for petitioner Mars.

James K. Robinson, U. S. Atty. by Kenneth R. Fitzpatrick, Asst. U. S. Atty., Detroit, Mich., for respondent U. S. A.

## OPINION

FEIKENS, District Judge.

Petitioner was convicted of bank robbery on September 26, 1975 and sentenced by this court to a ten (10) year prison term and a consecutive six (6) month term for criminal contempt. The bank robbery conviction was to run concurrently with a sentence of two to fifteen (2–15) years which petitioner was then serving under a state conviction for armed robbery. He now brings a motion under 28 U.S.C. § 2255 seeking to have the judgment and sentence vacated on the ground that Article IV §§ (c) and (e) of the Interstate Agreement on Detainers Act (IAD) were violated.

A hearing was held in this matter and extensive documentary evidence submitted on stipulation of the parties. The chronology of relevant events and pertinent documents is as follows:

1974:

10/15 Petitioner was sentenced to 2–15 years in prison by Circuit Judge Julian E. Hughes, Berrien County, Michigan.

10/24 Federal Complaint and Warrant ( # 4–82908) for unarmed bank robbery issued.

10/30 Federal detainer directed to Sheriff of Berrien County, received at Jackson State Prison 11/18/74.

11/4 Petitioner arrived at Reception and Guidance Center, Jackson State Prison.

11/13 Federal detainer directed to Jackson State Prison, received 11/18/74.

11/25 Detainer noted by state prison authorities.

12/31 Petitioner transferred from Reception and Guidance Center at Jackson State Prison to Ionia State Reformatory.

1975:

2/5 Federal Writ of Habeas Corpus Ad Prosequendum issued.

2/13 Petitioner released from Ionia State Reformatory to Federal custody. Detainer directed to Ionia State Reformatory.

2/14 Arraignment on Complaint. Petitioner returned to Ionia State Reformatory. Detainer received by Ionia State Reformatory.

2/25 Federal Writ of Habeas Corpus Ad Prosequendum issued.

3/3 . Petitioner released from Ionia State Reformatory to Federal custody.

3/5 Petitioner returned to Ionia State Reformatory.

4/22 Federal Bank Robbery Complaint dismissed for no progress.

5/28 Detainer noted by state prison authorities.

6/18 Detainer noted by state prison authorities.

7/16 Federal Bank Robbery Indictment filed ( # 4–82908). Detainer noted by state prison authorities.

7/21 Federal Writ of Habeas Corpus Ad Prosequendum issued.

7/24 Petitioner released from Ionia State Reformatory to Federal custody.

7/25 Arraignment on Federal Bank Robbery Indictment. Federal docket indicates "Detainer noted only—deft. remanded."

7/31 Petitioner returned to Ionia State Reformatory.

9/11 Federal Writ of Habeas Corpus Ad Prosequendum issued. Petitioner released from Ionia State Reformatory to Federal custody.

9/15 Federal bank robbery trial begins.

9/26 Guilty verdict.

10/1 Petitioner returned to Ionia State Reformatory. Detainer noted by state prison authorities.

11/26 Federal Writ of Habeas Corpus Ad Prosequendum issued.

12/3 Petitioner released from Ionia State Reformatory to Federal custody.

12/4 Petitioner sentenced to 10 years for bank robbery. Detainer directed to Ionia State Reformatory.

12/5 Petitioner returned to Ionia State Reformatory.

Petitioner claims two separate violations of the IAD. He claims that § IV(c) was violated because of the failure of the government to try him within 120 days of his first arrival in federal custody; he also claims that § IV(e) was violated because on three separate occasions the government took him from state to federal custody and returned him to state custody without a trial.[1]

■ The crucial question in this case is whether the provisions of the IAD were triggered by the procedures and documents employed. The United States Court of Appeals for the Sixth Circuit has made it clear that a writ of habeas corpus ad prosequendum is not a "detainer" for purposes of the IAD. *Ridgeway v. United States*, 558 F.2d 357 (6th Cir. 1977). What remains to be determined is whether the use of the writ in this case triggered the provisions of the IAD.

Article IV, section (a) provides that:

The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a *written request* for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: And provided further, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner. (emphasis supplied)

The phrase "written request" does not refer to the ancient writ of habeas corpus ad prosequendum. Nowhere in IAD is the writ mentioned. This writ has been used in this country for over 200 years to secure the appearance of prisoners at trial. It was embodied in the First Judiciary Act, 1 Stat. 81–82 (1789) and is now incorporated in 28 U.S.C. § 2241(c)(5) and the laws of many states. In *Ridgeway, supra,* the Sixth Circuit discusses at length the distinction between the writ and a detainer, and "refuse to interpret the word 'detainer' to include the writ of habeas corpus ad prosequendum." At 362.

If the "written request" spoken of in the IAD is to encompass the writ of habeas corpus ad prosequendum, the agreement and supporting legislation would have to say so explicitly. 28 U.S.C. § 2241(c)(5) codifies its use in the federal courts, and nowhere is there any expression of congressional intent to modify or change the use of the writ. *Ridgeway, supra.* The interpretation of the IAD proposed by petitioner would implicitly repeal § 2241(c)(5) and runs counter to fundamental rules of statutory construction.

■ In *Ridgeway, supra* at 362, the court quotes the statement of the Senate Committee on the Judiciary to demonstrate that Congress did not intend to make the IAD the exclusive means by which a state prisoner can be brought to trial in federal court. *See also, United States v. Scallion,* 548 F.2d 1168 (5th Cir. 1977); *United States v. Kenaan,* 557 F.2d 912 (1st Cir. 1977). *Contra, United States v. Ford,* 550 F.2d 732 (2d Cir. 1977); *United States v. Mauro,* 544 F.2d 588 (2d Cir. 1976); *United States v. Sorrell,* 562 F.2d 227 (3d Cir. 1977); *United States v. Thompson,* 562 F.2d 232 (3d Cir. 1977).

When Congress enacted the Speedy Trial Act of 1974, 18 U.S.C. § 3161, *et seq.,* it

---

1. Article IV § (a) is quoted in the text below; § (e) provides:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

made no reference to the IAD, nor was it suggested that state inmates possessed any particular speedy trial rights under the Act. This gives further support to the view that Congress intended that there would be alternative methods for handling cases in which the accused is a state prisoner. Indeed, § 3161(j) sets out such an alternative. If Congress had considered the IAD as the sole means of securing the presence of state prisoners, it would have had to write § 3161(j) in different terms. That it did not do so suggests that the writ remains as an alternative means of securing a state prisoner's presence at trial.

As a judge I can and do take notice of the use of the writ of habeas corpus ad prosequendum in our court. The marshals have moved prisoners into our court through the exclusive use of the writ whenever appearance or testimony was required. No distinction is made between the case of a prisoner who has a formal detainer in his file and one who does not. The reason is obvious; this method of moving prisoners is completely judge-directed and for trial purposes. For this reason, as well as others, the writ is an alternative to the movement of prisoners under IAD.

In the recent case of *United States v. Eaddy,* 563 F.2d 252 (6th Cir. 1977), the Sixth Circuit has given further guidance in this regard. A district court is required to make a factual determination whether the writ or the IAD procedures were used to bring the prisoner from state to federal custody. If the writ is used, the provisions of the IAD are not triggered and consequently cannot be violated.

■ On the basis of the hearing and the record in this case, I specifically find that the writ of habeas corpus ad prosequendum was the only document or procedure used to transfer petitioner from state to federal custody. The detainers filed in the state prison system had no effect whatever on the movement of petitioner. The detainer, dated October 30, 1974, did not effect any movement of petitioner, nor did the detainer, dated November 13, 1974, effect any movement. The transfer of petitioner from state to federal custody on February 13, 1975 was pursuant to the writ of habeas corpus ad prosequendum issued on February 5, 1975. The detainer, dated February 13, 1975, did not effect any movement of petitioner. The transfer of petitioner from state to federal custody on March 3, 1975 was pursuant to the writ of corpus ad prosequendum issued on February 25, 1975. The transfer of petitioner from state to federal custody on July 24, 1975 was pursuant to the writ of habeas corpus ad prosequendum issued on July 21, 1975. The transfer of petitioner from state to federal custody on September 11, 1975 was pursuant to the writ of habeas corpus ad prosequendum of that date. The transfer of petitioner from state to federal custody on December 3, 1975 was pursuant to the writ of habeas corpus ad prosequendum issued on November 26, 1975. The detainer, dated December 4, 1975, did not effect any movement of petitioner. Since the provisions of the IAD were not used to transfer him he cannot claim any violation of the Act's procedures.

In *Browning v. Warden,* Civil Action 7–70607, opinion dated November 9, 1977, this court held extensive hearings. There, as here, it was found that a writ of habeas corpus ad prosequendum and not a detainer was used to transfer the defendant. That case and the present case illustrate the point that the interpretation advanced by petitioner would yield a result directly contrary to the purpose of IAD. Article I states that the procedures of the Act are necessary because certain practices "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." A substantially *greater* disruption of treatment and rehabilitation would occur if the IAD required that every prisoner transferred pursuant to a writ had to be held in the custody of the receiving state until tried. Under the procedures followed in this case and in *Browning,* the defendant was returned to his primary place of incarceration within one or two days on most occasions. This minimized the disruption rather than aggravating it as petitioner would have us do.

Since the court finds that the writ of habeas corpus ad prosequendum was used to transfer petitioner and that the detainers filed played no part whatever in his movement into federal custody, the IAD is not applicable. Because the IAD is inapplicable, its provisions are not violated. The motion to vacate the judgment and sentence is, therefore, denied.