463 F.Supp. 87 (1978)
Joseph Herbert MARS, Petitioner,
v.
UNITED STATES of America, Respondent.
Crim. A. No. 4-82908. Civ. A. No. 7-70165.
United States District Court, E. D. Michigan, S. D.
December 18, 1978.
*88 Federal Defender Office by Kenneth R. Sasse, Deputy Federal Defender, Detroit, Mich., for petitioner.
United States Attorney's Office, James K. Robinson, U.S. Atty. by Kenneth R. Fitzpatrick, Asst. U.S. Atty., Detroit, Mich., for respondent.

OPINION
FEIKENS, District Judge.
In United States v. Mars, 443 F.Supp. 774, (E.D.Mich.1978) (hereinafter "Mars"), the petitioner brought a motion to vacate his federal bank robbery conviction on the ground that the government had violated the Interstate Agreement on Detainers Act, 18 U.S.C. App. ("IAD") in securing his conviction. I denied that motion for the reasons set forth in Mars. The petitioner appealed and on November 7, 1978, the United States Court of Appeals for the Sixth Circuit remanded the case for consideration in light of United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) *89 aff'g United States v. Ford, 550 F.2d 732 (2d Cir. 1977). The court of appeals gave the following instructions.[1]
1. Determine the date from which the delay in trying Mars should be calculated for the purpose of determining whether IV(c), 18 U.S.C. App. was violated.
2. Determine whether IAD itself was violated.
3. Determine whether § 2255 is an appropriate way in which to raise IAD claims.
4. Determine whether Mars waived his IAD claims by failing to raise them before trial.
5. Decide whether the Supreme Court's decision in Mauro is retroactive.
1. The date from which the 120 day period in IV(c) should be calculated is July 24, 1975, the date of his third release to federal custody. Therefore, because only 53 days elapsed between Mars' arrival in federal custody and his trial, no violation of IV(c) has occurred in this case, even under United States v. Mauro.
Mars argues that the 120 day period should be calculated from February 13, 1975, the date on which he first came into federal custody. However, he fails to note that the complaint which initiated the federal authorities' involvement was dismissed for lack of progress on April 22, 1975. IV(a) specifies that prisoners are transferred under the IAD only when an indictment or complaint is pending. For purposes of this conviction, this did not occur until July 24.
2. However, even though IV(c) was not violated, IV(e) would have been violated under the interpretation of the IAD in United States v. Mauro. On July 24, 1975, Mars was taken into federal custody by a writ of habeas corpus ad prosequendum, and on July 31 he was returned to state custody without having been tried.
3. As to whether a § 2255 motion is a proper way to raise an IAD claim, I conclude that the court of appeals has effectively foreclosed a negative answer, at least on the facts of this case. If the court did not believe § 2255 appropriate it would have dismissed this petition instead of remanding. Were I free to decide this question, I would follow United States v. Edwards, 564 F.2d 652, 653 (2d Cir. 1977) and Hitchcock v. United States, 580 F.2d 964, 966 (9th Cir. 1978) and hold that IAD claims may not be raised in § 2255 motions.
4. Although Mars may raise his IV(e) claim here, by failing to raise it until now, he has waived it.
Mars contends that he did not waive the IAD's protections because the rights conferred by the IAD are forfeited only upon knowing and intentional relinquishment. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
I disagree. The rights conferred by the IAD have been analogized to those that arise from jurisdictional statutes, statutes of limitations, speedy trial statutes and removal statutes. (See Government's Court of Appeals Brief, pp. 11-12). It is not necessary to decide which of these is most appropriate in order to hold that IAD rights may be waived by failing to present them at trial or on appeal. As the Supreme Court said in Schneckloth v. Bustamonte, 412 U.S. 218, 237, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854 (1973), "the requirement of a knowing and intelligent waiver has [generally] been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." The rights flowing from the IAD are not related to trial fairness.
Though no case has come to my attention which directly addresses the issue at hand, several cases hold the IAD may be waived in a variety of contexts. In Gray v. Benson, 443 F.Supp. 1284, 1294 (D.Kan.1978), the court discussed many of these cases and noted in dicta that IAD rights could be waived. In United States v. Palmer, 574 *90 F.2d 164, 167 (3d Cir. 1978), cert. denied, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978), the court found that a guilty plea waived a IV(e) violation. In Strawderman v. United States, 436 F.Supp. 503, 504 (E.D.Va.1977), the court held that an IAD claim was not a jurisdictional defect and hence was waived by a guilty plea, citing Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) and Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In United States v. Cyphers, 556 F.2d 630, 637 (2d Cir. 1977) (Timbers, J., dissenting in part and concurring in part), cert. denied, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 792 (1978), it was stated that the IAD was waived because it was not raised before trial. Judge Timbers reasoned that the purpose of the IAD is to deter certain delays in bringing defendants to trial. Because the government cannot rely on prisoners to fail to raise the IAD before trial, no deterrent purpose would be served by allowing the IAD to be raised after trial. See also United States v. Scallion, 548 F.2d 1168, 1174 (5th Cir. 1977), cert. denied, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978).
Similarly, some courts say that IV(e) claims are waived if the prisoner requests to be transferred from the transferee state to the transferor state before trial. United States v. Scallion, supra, 548 F.2d at 1170; United States v. Ford, supra, 550 F.2d at 742; United States v. Mauro, 436 U.S. at 364, 98 S.Ct. 1834 (no waiver of IV(c) claims because prisoner raised speedy trial claim).
The Sixth Circuit Court of Appeals' finding that the prisoner did not waive his IAD claim by failing to present it before trial in United States v. Eaddy, 563 F.2d 252, 255 (6th Cir. 1977) does not compel a contrary result. There the prisoner raised a speedy trial claim before trialMars did not. Moreover, the Court of Appeals expressly left open the waiver question in its remand. Had it thought the matter foreclosed it would have so indicated.

5. The Retroactivity of Mauro

The final questionthe retroactivity of the Supreme Court's decision in United States v. Maurois the weightiest one presented.
Briefly, Mauro held that where, as here, the government lodges a detainer against a prisoner in state custody and then procures him by a writ of habeas corpus ad prosequendum, the IAD applies, because writs of habeas corpus ad prosequendum are "written requests for temporary custody." In Mars, I held that they were not.
If United States v. Mauro is given retroactive effect, and the other issues here are resolved in his favor, Mars' federal conviction will be void. I hold, however, that United States v. Mauro should not be applied retroactively.[2]
In support of his retroactivity claim, petitioner cites United States v. Estate of Donnelly, 397 U.S. 286, 294-5, 90 S.Ct. 1033, 1038, 25 L.Ed.2d 312, which states, although
. . . the United States, like other parties, is entitled to adhere to what it believes to be the correct interpretation of a statute . . . [it is only in] rare cases [that] decisions construing federal statutes might be denied full retroactive effect . . ..
Mars contends that United States v. Mauro is not one of the "rare cases" referred to.[3] Although I do not gainsay the Supreme Court, a canvass of pertinent authority *91 leads me to conclude that the petitioner is in error on this question.
There has been substantial recent development in the doctrine of non-retroactivity. The case of Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) is particularly instructive in this regard. That case involved a claim that the decision in Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) should be given retroactive application. Rodrigue held that the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq., should govern injuries sustained on fixed structures located on the Shelf. This holding resulted in a shorter statute of limitations being applied to the plaintiff's claim than had applied when he filed his suit. Under the old rule, his claim was timely while under the new interpretation of the Act, his claim was barred. The Supreme Court held that the decision in Rodrigue should not apply retroactively and in so doing provided a useful synopsis of the history of the doctrine of non-retroactivity. The Court stated:
In recent years, the nonretroactive application of judicial decisions has been most conspicuously considered in the area of the criminal process. But the problem is by no means limited to that area. The earliest instances of nonretroactivity in the decisions of this Court  more than a century ago  came in cases of nonconstitutional, noncriminal state law. It was in a noncriminal case that we first held that a state court may apply its decisions prospectively. And, in the last few decades, we have recognized the doctrine of nonretroactivity outside the criminal area many times, in both constitutional and nonconstitutional cases. Id., 404 U.S., at 105-106, 92 S.Ct., at 355. [citations omitted] [footnotes omitted]
This discussion, in addition to being of general interest in this case, is especially pertinent in another regard. It disposes quickly of a contention that petitioner raises in his brief: that cases of statutory construction are more appropriate for retroactive application than decisions announcing new constitutional rules. The Chevron case does not draw such a distinction nor is one immanent in the opinion. See also Daniel v. Louisiana, 420 U.S. 31, 32, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).[4]
Moreover, several lower court decisions have expressly said there is no significance to the distinction. The case of Bailey v. Holley, 530 F.2d 169 (7th Cir. 1976), cert. denied, 429 U.S. 845, 97 S.Ct. 125, 50 L.Ed.2d 116 (1976) is helpful. There the petitioner attempted to attack his conviction with a decision that did not exist at the time of his trial. The decision construed § 555(e) of the Administrative Procedure Act. The court first noted that, in general, decisions are given retroactive effect only where the new rule remedies a deficiency in the fact finding process or where the conduct for which the petitioner is being punished is determined to be constitutionally protected. Id., at 172-73, n. 6 & 7 (citing cases). Secondly, the court explained that cases of statutory construction should be handled in the same manner as cases announcing new rules of constitutional law or procedure. Of particular interest in this respect, the court thought, is McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) which denied retroactive effect to Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).[5] The court also cited several other examples where statutory constructions by the Supreme Court have not been retroactively applied by the lower courts. E. g., Owens v. United States, 383 F.Supp. 780, 785-87 (M.D.Pa.1974) which denied retroactive effect to Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) which construed the Federal Youth Corrections Act, 18 U.S.C. § 5010(d). Concluding, the Court stated:

*92 In view of this [and other] authority, we reject petitioner's contention that the Stovall criteria for deciding questions of retroactivity are not applicable to decisions based on statutory construction. 530 F.2d at 173.
I, therefore, conclude that there is no reason not to decide this case according to the criteria set forth in Stovall v. Denno, infra, and other cases in that line.[6]Linkletter v. Walker, supra, 381 U.S. at 627, 85 S.Ct. 1731, also rejects any distinction between civil and criminal contexts.[7]
These criteria are articulated in Michigan v. Payne, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1972), which denied retroaction to North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).[8] There the Court stated:
The contours of the retroactivity inquiry have been clearly delineated in numerous decisions over the last decade. The test utilized repeatedly by this Court to ascertain whether "new" constitutional protections in the area of criminal procedure are to be applied retroactively calls for the consideration of three criteria: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
My analysis of this case in light of these criteria leads me to conclude that United States v. Mauro is not a proper case for retroactive application.
First, the purpose to be served by the "new" rule of United States v. Mauro is to deter the debilitating effects a detainer often has on a prisoner's chances for rehabilitation by providing, in a case like this one, for the speedy resolution of federal charges against the state prisoner.
Similar considerations were involved in Johnson v. New Jersey, 384 U.S. 719, 726-7, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) which denied retroactive effect to Miranda. The purpose of Miranda was to deter police conduct the Supreme Court felt is inherently coercive of the suspect. Just as the retroactive application of Miranda would not serve to deter future conduct any more effectively than prospective application, the retroactive application of United States v. Mauro will not deter any more effectively than prospective. Petitioner Mars will not by retroaction derive any of the benefits which the IAD was conceived to secure. His charges are long since resolved, and his transfers between federal and state custody are history.[9]
With respect to the reliance upon the old rule by law enforcement authorities  the second criterion  in Mars I took judicial notice of the federal authorities' long-standing *93 practice of moving prisoners into federal custody pursuant to writs of habeas corpus ad prosequendum without regard to whether the prisoner had a formal detainer lodged against him.[10] This constitutes a finding that there was, at the time of Mars' trial, widespread reliance by federal law enforcement officials on the interpretation of the IAD advanced in Mars.
This criterion received similar treatment from the Supreme Court in Michigan v. Payne, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973). The rationale of the Pearce rule, the Court reasoned, is to guard against the possibility of vindictiveness as a motivating factor in the resentencing determination. However, Payne noted that in many pre-Pearce cases, in reliance on the pre-Pearce rule, higher sentences had been given the second time a prisoner was presented for sentencing when no vindictiveness was present. The court concluded that for this reason Pearce should not be applied retroactively.
Michigan v. Payne also points out that where retroactive effect would operate as a windfall to persons already convicted, this weighs against retroaction. In the instant case, retroactive effect would be a windfall to Mars. He was not demonstrably prejudiced by the claimed improper conduct of federal authorities nor was the government on notice that it was to comply with the IAD when it used the writ to effect Mars' presence.[11] The result of retroactive application of Mauro would be a fortuitous gain to Mars without a corresponding gain to society.
The third factor involves the effect upon law enforcement administration that would flow from retroactive application of Mauro. This factor is of paramount importance here. The effect would be to upset the convictions of untold numbers of federal prisoners whose trials were devoid of even a hint of unfairness. See, e. g., Michigan v. Payne, supra, 412 U.S. at 52, 93 S.Ct. 1966. It would be the height of futility to reverse the convictions of guilty persons when the convictions were in no other way improper nor in any way related to conduct which the government could have known was improper. Moreover, the release of these prisoners would have a strong negative impact upon the morale of law enforcement officials who, in the routine course of their duties, relied upon the interpretation of the IAD set forth in Mars.[12]
My discussion of this third factor introduces another dimension to the nonretroactivity doctrine that has surfaced from time to time, namely the reasonableness of the law enforcement authorities' reliance on the rule I followed in the initial instance. Stated alternatively, the Supreme Court has opined that:
In our cases dealing with the nonretroactivity question, we have generally considered . . . [whether] . . . the decision to be applied nonretroactively . . . establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . Chevron Oil Co. v. Huson, supra, 404 U.S. at 106, 92 S.Ct. at 355.
In this case, while Mars did not overrule clear past precedent, the conclusion that a writ of habeas corpus ad prosequendum is not a "written request" within the IAD was one of first impression in this circuit. The case of United States v. Eaddy, supra, 563 *94 F.2d at 255 expressly did not decide the issue, nor was the issue presented in Ridgeway v. United States, 558 F.2d 357 (6th Cir. 1977) cert. denied, 436 U.S. 946, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978). Although the Second Circuit Court of Appeals had decided United States v. Ford, when Mars was decided, the decision was not in effect when Mars was tried. Moreover, this court is not bound by the Second Circuit's pronouncements, nor was I convinced of the wisdom of that decision. The Supreme Court's decision in Mauro was not foreshadowed by the Second Circuit Court of Appeals' decisions in United States v. Mauro, 544 F.2d 588 (2d Cir. 1976) and United States v. Ford, supra, see United States v. Sorrell, 562 F.2d 227, 231, n. 6b (3d Cir. 1977), its decision was not given retroactive effect.
For these reasons, the petitioner's motion under 28 U.S.C. § 2255 to have his conviction set aside is denied.
NOTES
[1] At this juncture it seems appropriate to direct the reader to the opinion in Mars for a full statement of the relevant facts and statutory provisions.
[2] Nor do I believe that this is a case of straightforward application of United States v. Mauro as was the case with United States v. Ford, supra, in Enright v. United States, 437 F.Supp. 580 (S.D.N.Y.1977). This is because all of the conduct complained of in both the petitioner's § 2255 motion in Mars and in the instant suit occurred a full year and a half before United States v. Mauro was decided. United States v. Mars was decided on 5/28/78. Mars' conviction was affirmed on 2/23/77 and the time for a petition for certiorari expired in late 1977. See Linkletter v. Walker, 381 U.S. 618, 622 n. 5, 627, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1964).
[3] He also claims that "[c]ase law firmly supports the correctness of petitioner's argument that the Mauro (Ford) decision is to be given retroactive effect." He cites in support of this contention, Enright v. United States, supra. However, Enright does not hold United States v. Ford to be retroactive.
[4] Daniel denied retroactive effect to Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) which held that petit juries must be selected from a source fairly representative of the community.
[5] Halliday held that where Rule 11 of the Federal Rules of Criminal Procedure is not complied with, the defendant may plead anew.
[6] E. g., Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). See generally, P. Mishkin, "The High Court, the Great Writ, and the Due Process of Time and Law," 79 Harv.L.Rev. 56 (1965).
[7] I decline to adopt the related analysis in Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) where the Supreme Court stated that double jeopardy is a right different from the procedural guarantees involved in Linkletter in that it prevents the second trial from taking place at all. I do not think that the IAD's sanctions necessarily make Robinson applicable. Numerous cases have stated that the IAD is not jurisdictional in nature. United States v. Palmer, supra, 574 F.2d at 167; Strawderman v. United States, supra, 436 F.Supp. at 504. Moreover, Robinson points out that "only those procedural rules affecting `the very integrity of the factfinding process' would be given retrospective effect."
[8] North Carolina v. Pearce held that a higher sentence upon resentencing is an unconstitutional burden on the right to appeal.
[9] A similar analysis was used in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which denied retroactive effect to Mapp v. Ohio. Moreover, none of the evils against which the IAD was aimed presented themselves in Mars' case. He suffered no harm.
[10] See also United States v. Ford, supra, 550 F.2d at 742 for a similar observation.
[11] At least one United States Supreme Court case has indicated that good faith reliance by law enforcement officials upon an accepted course of conduct constitutes the kind of reliance that weighs against retroactivity. Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1972).
[12] Of particular relevance in this regard is Gosa v. Mayden, 413 U.S. 665, 685, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) where the Court discussed the unacceptability of freeing large numbers of prisoners whose convictions were devoid of even a hint of unfairness as a factor weighing against retroactive effect of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).